

Case No.: 3:23sw31

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Travis P. Six, depose and say as follows:

## INTRODUCTION

1.   Your Affiant is a Task Force Officer with the Drug Enforcement Administration, and have been since April 2021 and am currently employed as a Law Enforcement Officer with the Hanover County Sheriff's Office.  Your Affiant attended and completed the Hanover County Sheriff's Office Basic Law Enforcement Academy in 2008.  Since my employment with the Hanover County Sheriff's Office, Your Affiant have been assigned to the Uniform Patrol Division, Special Operations Division and more recently the Investigative Division. Currently your Affiant is assigned to the Richmond District Office HIDTA Group 23 as a Task Force Officer.  I have attended and completed numerous training courses to include but not limited to search and seizure, drug interdiction, money laundering, drug and advanced drug investigations courses. Recently your Affiant has attended and completed the Washington District Office Task Force Officer School.  Your Affiant has been involved in numerous investigations dealing with the possession, manufacture, distribution, and importation of controlled substances.

2.   The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses and conversations your Affiant has with other agents and investigators (collectively "agents") involved in this investigation.  This affidavit is not intended to include every fact and matter known to me or the United States of America.  Your Affiant has set forth only those facts necessary to support probable cause for the search of the property.

3.   I present this affidavit to support an application for a search warrant for Apartment 404 located within the Hudson Apartments Complex with an address of 700 Stockton

Street, Richmond, VA 23224, for evidence, indicia and fruits of illegal distribution, possession with the intent to distribute, and conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846.

## PROBABLE CAUSE

### I.     BACKGROUND

1. Broadly summarized, this investigation concerns a conspiracy to illegally distribute, and possess with the intent to distribute methamphetamine throughout the United States by individuals known and unknown to law enforcement, who are utilizing text messages, phone calls, encrypted application-based communications, and other methods to conduct their illegal activities. Identified conspirators are located in Richmond, Virginia, Los Angeles, California, and abroad.

### II.    Execution of a Virginia Search Warrant at the Henrico Residence.

2. On September 8, 2022, the VSP executed a state search warrant for an Henrico residence. During the search of the residence, investigators located approximately two pounds of a substance that they had probable cause to believe was methamphetamine and approximately a quarter ounce of cocaine base commonly known as "crack." Laboratory analysis confirmed that the methamphetamine seized had a net weight of 1215 grams with a purity level of 96%. Methamphetamine with a purity level in excess of 80% is referred to as "crystal meth." Laboratory analysis also confirmed that the cocaine base had a net weight of 9.28 grams. Based on my training and experience, the amounts seized are indicative of distribution and not personal use.

3. Additionally, upon entry, two individuals were located inside the Henrico residence. These two individuals were advised of their *Miranda* rights and agreed to waive those rights and to speak with law enforcement. In an effort to protect their identities, they will be referred to as Cooperating Defendant 1 (CD-1) and Cooperating Defendant 2 (CD-2).

4. CD-1 advised, in summary, that he/she purchases bulk quantities of crystal methamphetamine from an individual CD-1 only knew as "Slim." In an effort to protect the identity of this person, they will be referred to as Cooperating Defendant 3 (CD-3). CD-1 then initiated a brief conversation with CD-3 via text message. In the message, CD-1 placed an order for narcotics from CD-3. A transcript for that conversation is detailed below:

CD-1: everything still good on cream.

CD-3: Yea.

CD-1: I'm ready wen u ready.

CD-3: what u wanted.

CD-1: same thing.

5. Your Affiant is aware that drug traffickers frequently utilize coded and cryptic communication to insulate themselves from law enforcement intervention. In your Affiant's experience, when traffickers utilize coded language for crystal methamphetamine, it is commonly referred to either a glass or liquid, or in this case, "cream," because crystal methamphetamine is crystal-like, glass-like, and has an opaque coloring (such as a liquid). When CD-1 asked CD-3 if, "everything was good on cream," CD-1 was asking if CD-3 had any crystal methamphetamine for sale. When CD-1 and CD-2 were asked to clarify what the word "cream" was code for, both advised that "cream" meant methamphetamine.

6. When CD-1 told CD-3, "same thing" CD-1 was advising CD-3 that he/she wanted to purchase the same amount as last time, referring to the approximate two pounds of drugs found inside the Henrico residence during the execution of the search warrant on September 8, 2022.

7. CD-1 advised that CD-3 was operating a white sedan with a Pennsylvania registration. CD-3 then provided CD-1 with a meeting location. Later, on September 8, 2022, the meet location was changed to an identified hotel near the Colonial Heights Mall in Colonial Heights, Virginia.

### III. Buy Bust Involving Crystal Methamphetamine - September 8, 2022.

8. Pursuant to the information provided by CD-1, VSP obtained a state search warrant for geo-location data for the telephone number used by CD-3 which had communicated with CD-1 and CD-2 (that telephone number is not being provided in this affidavit to protect the identity of CD-3).

9. On September 8, 2022 in the evening, geo-location data for the telephone used by CD-3 placed it in the area of the identified hotel in Colonial Heights, Virginia. DEA and VSP investigators initiated surveillance in the area of the hotel. Investigators observed a white Chevrolet Malibu bearing a Pennsylvania registration parked in the parking lot. The Chevrolet Malibu was occupied by an individual subsequently identified as CD-3. CD-3 exited the Chevrolet Malibu and entered the hotel.

10. An investigator followed CD-3 into the hotel and observed CD-3 checking in at the front counter. Once CD-3 checked in, the investigator asked the clerk for the rental information for CD-3, and CD-3's identification was provided. A photograph of CD-3 was shown to CD-1 and CD-2, who verified that CD-3 was the individual from whom they had purchased crystal methamphetamine.

11. A short time later, CD-3 was observed exiting the hotel. CD-3 was approached by law enforcement and advised that he/she was being detained. CD-3 was asked for consent to search

4

the Chevrolet Malibu that CD-3 had been observed operating, however CD-3 advised that he/she had thrown the keys away prior to being approached by law enforcement.

12. A police canine was requested and provided a positive alert for the presence of the odor of drugs in the car. VSP subsequently obtained a state search warrant for the Chevrolet Malibu. A search of the Chevrolet Malibu yielded the recovery of approximately three pounds of a substance investigators had probable cause to believe was crystal methamphetamine, which was concealed in a sealed box of cat litter. The crystal methamphetamine was hidden within the cat litter and was not simply resting on top of it. A laboratory analysis subsequently confirmed that the drugs seized was Methamphetamine having a net weight of 1,342 grams and a purity level of 98%.

### IV.   Post *Miranda* Interview of CD-3

13. Following the detention of CD-3, CD-3 was escorted to his/her hotel room by DEA and VSP investigators. CD-3 was advised of his/her rights pursuant to *Miranda*. CD-3 agreed to waive those rights and provide a statement. CD-3 also provided consent to search three cellular telephones that were in CD-3's possession at the time of the interview.

14. In summary, CD-3 advised he/she was introduced to a Hispanic male known to CD-3 as "Gunner." Gunner was subsequently identified as Rodolfo VILLANUEVA (hereinafter VILLANUEVA.) CD-3 advised that he/she had been introduced to VILLANUEVA by a family member. CD-3 provided a physical description of VILLANUEVA to investigators.

15. CD-3 advised that he/she purchased kilogram (1000 gram) quantities of drugs, to include cocaine and heroin, and multi-pound quantities of methamphetamine from VILLANUEVA, and that CD-3 had been doing so since approximately January 2022. CD-3 advised that he/she would contact VILLANUEVA using any one of three California telephone numbers. Those telephone numbers were identified as (213) 641-7516, (323) 875-2926, and (609) 973-7300. CD-3 advised

he/she would contact VILLANUEVA via the WhatsApp encrypted communication application via text, voice call, and voice message to purchase narcotics from VILLANUEVA. CD-3 advised that he/she had previously met with a heavy-set Hispanic male and two Hispanic females who CD-3 believe are associates of VILLANUEVA. CD-3 further advised that on occasion, VILLANUEVA would have CD-3 travel to meet individuals in order for CD-3 to provide them with drugs, all at the direction of VILLANUEVA. A photograph of VILLANUEVA was shown to CD-3, who positively identified the photograph of VILLANUEVA as the person he knew as "Gunner."

16. CD-3 advised that he/she purchased narcotics from VILLANUEVA at wholesale prices. Specifically, CD-3 purchased crystal methamphetamine for approximately $2,000.00 - $2,500 per pound, cocaine for approximately $29,000 per kilogram (1000 grams), and heroin for approximately $2,000.00 per ounce (28 grams).

### V. Identification of VILLANUEVA

17. On September 13, 2022, DEA and VSP investigators conducted an additional debrief of CD-3. CD-3 advised that VILLANUEVA had provided a new telephone number to CD-3. This telephone number was identified as (804) 522-3240. DEA issued an Administrative Subpoena for telephone number (804) 522-3240 and identified the subscriber for this telephone number as Mario Rolando with an address 301 W Franklin Street, Sandston, Virginia (this is a nonexistent address). Investigators obtained a state search warrant for the geo-location for telephone number (804) 522-3240.

18. CD-3 further advised he/she discretely took a digital photograph of a vehicle CD-3 observed VILLANUEVA operating. CD-3 provided the photograph to DEA and VSP investigators and identified the vehicle as a white Hyundai SUV bearing Florida registration 77B-YPL. DEA investigators served an Administrative Subpoena on Hertz Rental Car, the registered

owner of the vehicle. Hertz advised that the vehicle had been rented by VILLANUEVA. VILLANUEVA had provided Hertz with a California driver's license in order to rent the vehicle, and provided an additional telephone number as (747) 295-2161, as well as an email address VILLANUEVARODOLFO397@GMAIL.COM.

### VI. Controlled Purchase from VILLANUEVA on September 21, 2022.

19. On September 21, 2022, members of the DEA and the VSP met with CD-3 to conduct a controlled purchase of crystal methamphetamine from VILLANUEVA. The night before, on September 20, 2022, investigators directed CD-3 to telephonically contact VILLANEUVA using cellular telephone number (609) 973-7300. During this communication, CD-3 informed VILLANUEVA that he/she had "bread," (U.S. currency) and that he/she wanted to purchase one additional pound of "cream" (crystal methamphetamine.) The CS informed VILLANUEVA that he/she would reach back out when he/she was ready to conduct the purchase of drugs from VILLANEUVA.

20. On September 21, 2022, at approximately 5:00 p.m., CD-3 met with investigators at a predetermined meeting location. CD-3 and his/her vehicle were searched for U.S. currency, drugs, weapons, and other contraband and none was found.

21. Investigators then instructed CD-3 to communicate with VILLANUEVA to conduct the controlled purchase. CD-3 placed a telephone call to VILLANUEVA which went unanswered. VILLANUEVA responded with a text message using the encrypted WhatsApp application stating, "Let me callus u readt." CD-3 responded, "Yeah waiting on u." A short time later VILLANUEVA texted CD-3 via WhatsApp, "waiting." After several minutes, VILLANUEVA sent a text message stating, "15 min u gonna have to go to him I'll send u addy it not that far." CD-3 responded back, "Aite lmk." Eventually, VILLANUEVA provided the address of 5401 W Broad via text message.

7

This address was identified as a Target store located on W. Broad near Libby Avenue, Henrico, Virginia.

22. Investigators subsequently provided CD-3 with Official Advanced Funds (currency) to conduct the controlled purchase, as well as surveillance equipment. Then, CD-3 travelled to the Target store as directed by VILLANUEVA.

23. Upon arrival, CD-3 sent a text message to VILLANUEVA via WhatsApp indicating that he/she had arrived at the Target store. CD-3 sent an audio/voice message indicating how far it was (to the Target Store.) VILLANUEVA responded via a voice message stating, "Hey he's on his way to the restroom, and he's the big Mexican guy." Upon receiving this message CD-3 walked into the Target store. A brief meeting and transaction was heard via audio and video which took place in the bathroom of the Target store. The individual who conducted the transaction with CD-3 was described as a heavy-set Hispanic male wearing a khaki vest with slicked back hair (hereinafter Unknown Male 1 or UM-1.)

24. Following the transaction, CD-3 exited the Target store and returned to his/her vehicle. CD-3 then traveled to meet with investigators at a pre-determined location for a post-controlled purchase debrief. There, investigators conducted a search of CD-3 and his/her vehicle which yielded the recovery of one large package containing approximately eight pounds of crystal methamphetamine. Laboratory analysis confirmed that the drugs purchased was in fact methamphetamine with net weight of 3,587 grams, and with a purity level of 96%. No other contraband or currency was located on CD-3 or in CD-3's vehicle.

25. Based upon your Affiant's training and experience, conducting a drug transaction in this manner is commonly referred to as "compartmentalization." This would be indicative of an experienced and disciplined drug trafficking organization (DTO) wherein members of the

8

conspiracy segregate each participant from other members to insulate the organization from law enforcement intervention. Oftentimes these individuals will assign each participant a non-specific nickname (such as "Gunner" in the case of VILLANUEVA.) The purpose of this is to protect the organization as a whole. For example, in the event that a courier working within a drug trafficking organization were interdicted and drugs seized, the courier would only be able to provide a fictitious name and a telephone number for other members of the organization, while other members of the conspiracy could continue their operation without being identified and/or arrested.

26. This narrative applies to this investigation. For example, when CD-3 initially contacted VILLANUEVA, VILLANUEVA told CD-3, "let me callus u readt" VILLANUEVA was telling CD-3 that he would contact a third party (presumably a courier,) and asked CD-3 if he/she was ready to conduct the transaction. Further, when VILLANUEVA stated, "15 min u gonna have to go to him I'll send u addy it not that far," VILLANUEVA was advising CD-3 that CD-3 would have to travel to meet the courier (here, UM-1) in order to receive the drugs, and that the courier would be ready to meet in 15 minutes.

## VII.  Surveillance Operation Following Controlled Purchase on September 21, 2022.

27. On September 21, 2022, following the controlled purchase, investigators conducted surveillance of UM-1 (described above). An investigator entered the Target store and observed UM-1 wander around the store selecting non-specific items. Ultimately, UM-1 paid for these items and exited the Target Store. UM-1 then waited at the entrance to the Target store. After several minutes, UM-1 approached a white Volkswagen vehicle displaying Virginia registration UZD8510 (hereinafter, the Volkswagen sedan.) As the Volkswagen sedan departed from the Target store's parking lot, surveilling investigators observed a Lyft rideshare insignia on the dashboard of the Volkswagen sedan.

28. The Volkswagen sedan exited the Target store traveling west on Broad Street before entering the El Rey Latino Market located at 6006 W Broad Street, Henrico, Virginia. The Volkswagen sedan parked and UM-1 exited the back seat and entered the El Rey Latino Market. After several minutes, UM-1 was observed exiting the El Rey Latino Market carrying a white plastic bag suspected to be to-go food. UM-1 re-entered the Volkswagen sedan departing the area traveling East on Broad Street. At this point surveillance of UM-1 was lost and surveillance was discontinued.

### VIII. Records Provided by Lyft, Inc.

29. Based upon the intelligence derived from the surveillance operation detailed above, DEA investigators obtained records for the time UM-1 utilized Lyft, Inc services (requesting records associated with the Volkswagen sedan used by UM-1). Records were requested for around the time UM-1 utilized the Lyft, Inc. services. Based upon information provided by Lyft, Inc., investigators determined that the rideshare had been summoned by VILLANUEVA using telephone number (747) 295-2161 and the email account VILLANUEVARODOLFO397@GMAIL.COM. The pickup location was set as the Target store and the drop off location was identified as 100 S 12th Street, Richmond, Virginia. This address was located at the intersection of two hotels. Lyft, Inc. further advised that the account had been activated by VILLANUEVA on July 19, 2022, at the IP address 166.205.147.93.

### IX. November 10, 2022, Controlled Purchase

30. On November 10, 2022, members of the DEA and the VSP met with CD-3 in order to conduct a controlled purchase of crystal methamphetamine from VILLANUEVA. On the same date, investigators directed CD-3 to telephonically contact VILLANEUVA using cellular telephone number (609) 973-7300 via WhatsApp. During this communication, CD-3 informed VILLANUEVA that he/she wanted to purchase two additional pounds of "cream" (code for crystal

methamphetamine). CD-3 advised VILLANUEVA he/she had "14 altogether" (meaning $14,000) as payment. VILLANUEVA responded, "Ok cool. I just woke up, I'll call you right back."

31. A short time later, CD-3 attempted to call VILLANUEVA via WhatsApp, however, this telephone call went unanswered. VILLANUEVA responded with a text message stating, "wax" (believed to be typo for the word 'wait'). CD-3 then sent a text message to VILLANEUVA asking, "huh, wait" and "yoyo whats the word."

32. Several hours later, VILLANUEVA texted CD-3 via WhatsApp asking, "What time do you need those by." CD-3 responded, "I'm ready now how long u think?" CD-3 followed up this message stating, "My country boy waiting on me." VILLANUEVA responded via a voice text asking, "you got that 14 on you right" (referring to the $14,000 payment for the methamphetamine) which CD-3 affirmed. VILLANUEVA, via a voice text asked, "where do you want to link up at" to which CD-3 responded, "Wendy's." VILLANUEVA responded, "On Ruffin Mill? Send me the address." CD-3 then provided VILLANUEVA with the address 2126 Ruffin Mill Road, Colonial Heights, Virginia.

33. Following this exchange, a series of messages were exchanged between VILLANUEVA and CD-3 attempting to establish a time to meet. Ultimately, at approximately 7:43 p.m. VILLANUEVA sent a text message to CD-3 via WhatsApp stating, "I'll send you the ETA right now, he just jumped in it."

34. CD-3 met with investigators at a predetermined meeting location. CD-3 and his/her vehicle were searched for U.S. currency, drugs, weapons, and other contraband and none was found. Investigators subsequently provided CD-3 with Official Advanced Funds (currency) to conduct the controlled purchase, as well as surveillance equipment. Then, CD-3 travelled to a Wendy's as directed by VILLANUEVA.

35. Simultaneously, DEA investigators were conducting surveillance of UM-1. At approximately 7:48 p.m., DEA investigators observed UM-1 exit the Hudson Lofts apartment building located at 700 Stockton Street, Richmond, Virginia. Investigators observed UM-1 walking towards a nearby McDonald's restaurant carrying a brown paper bag.

36. At approximately 8:05 p.m., UM-1 was observed by DEA investigators entering a Toyota Prius which bore Virginia registration VWY9895 (hereinafter, the Toyota Prius). DEA investigators conducted surveillance of the Toyota Prius as it traveled from the McDonald's restaurant to the Wendy's restaurant located at 2126 Ruffin Mill Road, Colonial Heights, Virginia. UM-1 was observed by DEA investigators as he exited the passenger side of the Toyota Prius with a brown shopping bag in his possession and entered the Wendy's restaurant.

37. At approximately 8:28 p.m., CD-3 received a text message from VILLANUEVA advising, "Yo he's there." VILLANUEVA then called CD-3 and instructed CD-3 to meet UM-1 in the bathroom of the Wendy's. At approximately 8:32 p.m., CD-3 entered the Wendy's and proceeded to the bathroom. CD-3, wearing an audio/video recorder, met with UM-1 (as observed via audio/video recorder) inside the bathroom. CD-3 proceeded into a bathroom stall adjacent to UM-1. UM-1 passed the same brown paper bag that UM-1 had been observed holding during surveillance, to CD-3 underneath the stall (as captured via the audio/video recording). The bag contained two individually vacuum sealed packages of an opaque crystal-like substance. CD-3 them provided $14,000 to UM-1. UM-1 could be heard via the audio/video recorded counting the U.S. currency. CD-3 exited the Wendy's and surveillance was terminated.

38. CD-3 then traveled to meet with investigators at a predetermined location for a post-controlled purchase debrief. There, investigators conducted a search of CD-3 and his/her vehicle which yielded the recovery of two large packages containing approximately two pounds of

suspected methamphetamine. Laboratory analysis is currently pending. However, the two individually vacuum sealed packages containing the opaque crystal-like substance were packaged in an identical manner as the controlled purchase of methamphetamine that took place on September 21, 2022 (whose laboratory analysis confirmed the substance was crystal methamphetamine). Further, the crystal-like substance inside the vacuum sealed package was identical in shape, color, and size as the crystal methamphetamine that had been purchased on September 21, 2022. Further, the plastic used for the vacuum sealing was identical in labeling and color as the package purchased on September 21, 2022. There is therefore probable cause to believe, based on each of these factors, as well as the order that was placed, and the price paid for the methamphetamine, that methamphetamine was distributed to CD-3 by VILLANUEVA via UM-1.

X. **Video surveillance obtained for 700 Stockton Street, Apt. 404, Richmond, VA**

39. During the course of the investigation, your Affiant obtained access to live and past video surveillance of a camera system with a view of the entry door of apartment 404. Your Affiant was able to determine that during the controlled purchase on November 10, 2022, UM-1 exited the apartment at approximately 7:44PM with multiple bags in his possession before getting into the Hyundai Prius. One of the bags appeared to be the same bag that was observed to be in his possession during the controlled purchase. UM-1 returned to the apartment at approximately 11:46 pm. Additional video surveillance footage shows that from December 15, 2022 through December 20, 2022, VILLANUEVA and a third subject, who has been identified as Martin Valencia-CARRAZCO (hereafter, CARRAZCO), had been coming and going from this apartment with multiple bags. This type of movement appears to be consistent with drug traffickers transporting illicit substances to and from a stash (storage) location. According to lease records that were obtained from the Hudson

Apartment staff via an administrative subpoena, CARRAZCO is the lease holder for apartment 404. CARRAZCO was also the person who rented the Toyota sedan that was observed as being operated by VILLANUEVA during surveillance operations on October 19th through 21st, 2022. It should be noted that UM-1 was also observed in this vehicle as well

40. On February 10th, 2023 Your Affiant received information that VILLANUEVA booked a flight to Richmond, Virginia and was scheduled to arrive at approximately 4:15 pm. Your Affiant was able to coordinate with local agents assigned to DULLES Airport and was able to obtain a picture of VILLANUEVA with luggage in tow. On February 11, 2023 at 9:17 pm, a subject matching the description of VILLANUEVA, and wearing the same clothes as he was wearing at the airport upon his arrival, proceeded into apartment 404. At that time, nothing was observed in his possession prior to entry. At approximately 9:49 pm, the same subject exited the apartment with a shopping bag in their possession. At approximately 7:29 pm on February 12, 2023, the same subject, who appears to be VILLANUEVA (same descriptors and same clothes) arrived again and entered Apartment 404. At that time, the subject was transporting a camouflage duffle bag and small purple shopping bag as he entered the apartment. The same subject was observed exiting the apartment with only the purple shopping bag. Based on your Affiants training and experience, this type of activity is consistent with traffickers transporting illicit substances to and from their stash house.

## CONCLUSION

41. Based on the foregoing, Your Affiant requests that the Court issue the proposed search warrant for 700 Stockton Street, Apartment 404, Richmond, VA.

_____
Travis Six
DEA Task Force Officer
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 13th day of February, 2023, in Richmond, Virginia.

_____/s/ MRC_____
Mark R. Colombell
United States Magistrate Judge

Reviewed by AUSA Angela Mastandrea-Miller